United States District Court
District of South Carolina

| | |
|---|---|
| Michael Angelo Riddick, #306802;<br><br>Plaintiff;<br><br>vs.<br><br>Sheriff Leon Lott; and Cpl. Howard Austin, Richland County Sheriff Offices;<br><br>Defendants. | C/A No.8:05-2182-RBH-BHH<br><br>**Report and Recommendation** |

The Plaintiff, Michael Riddick, (hereafter, the "Plaintiff"), is a state prisoner proceeding *pro se*. He seeks relief pursuant to Title 42 United States Code § 1983. Under the provisions of 28 U.S.C. §636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., the undersigned is authorized to review all pretrial matters in prisoner cases filed under 42 U.S.C. §1983 and submit findings and recommendations to the District Court.

### BACKGROUND

Plaintiff is incarcerated at the Broad River Correctional Institution in Columbia, South Carolina. In his Complaint Plaintiff describes his arrest on May 27, 2004, in Columbia:

> I was arrested on May 27, 2004. I was at the Waffle House on Two Notch Rd. were [sic] I put in a application. After completing the form, I sat down to rest and began talking to another citizen who was in the place. One of the employee [sic] who name [sic] is China McKinney claim I was talking to [sic] loud, so I stated my fault, I'll hold it down. So I sat there for a few more minutes talking. As I got up to leave out the door, Cpl. Howard Austin cut in front of me and inform me to step back into the Waffle House. As I did, Cpl. Austin as [sic] the employee China McKinney was I the one. So I'm confuse of what is going on, so I ask; [sic] the one for what? Cpl. Austin stated that I was ask to leave serval

1

[sic] times by employee McKinney and I didn't leave. So I explain to him that no one ask me to leave, thats when Cpl. Austin ask me to sit down. He then went over to the citizen I was talking to and ask him was I to [sic] loud, the citizen stated a little loud, then Sgt. Roxanne Meetze came in and they spoke to employee McKinney and thats when Cpl. Austin came to me and ask me what did I have in the bottle that was on my bike, I told him soda. He ask me could he check it and I told him to help hisself [sic]. After he did this, he came in and told me that it didn't smell like no soda to him. Then he said, I hate people to lie to me. He then ask me to stand up and that's when he handcuffed me. Thats when another employee who name [sic] is Crystal Fain stated to the other employee that she was wrong because she never asked me to leave. I stated to Cpl. Austin why was he arresting me when he just heard the statement from Ms. Fain. Cpl. Austin stated he don't care, that I was still going in. I was taking [sic] to the police car and I ask Cpl. Austin what were they going to do about my bike, he stated it will be taking [sic] care of. I set [sic] in the back of the police car waiting for the van to take me to jail, while Cpl. Austin went back inside to stop the argument [sic] of Ms. McKinney and Ms. Fain. When Cpl. Austin return to the car, I ask about my bike again, he stated my wife is coming to pick it up, so I sat back in the seat and being I was handcuffed from the back, and Cpt. Austin not putting the handcuff so it wouldn't move, it tighten up on my wrist. I informed him the cuffs are to [sic] tight, he stated he will get it when the van comes. I kept telling him the cuffs are cutting off my circulation, so he tells me to stop crying. So we get to arguing I tell him to do his job, he talking about me crying. Then call my [sic] punk and I told him I will show him who is a punk, all he has to do is take off these cuffs and let him and me go behind that dumpster and it will tell. He stated he will give me that chance when the van comes. The I told him, he's the punk. Cpl. Austin then stated, shut up nigger, so I began talking more, my wife arrive to get my bike, my step daughter came, too. She was the one who ask Cpl. Austin where was the bike. I told my step daughter to tell my wife to come over to see how tight this officer's [sic] had these cuffs on me. Cpl. Austin stated I didn't want nothing. The van arrive after it seen [sic] like for hours and I told Cpl. Austin here's the van, be a man and do what you said you were going to do. My wife and them were still there so I get out of the police car and Off. Chauncey C. Smith who was driving the van came over. I was patted down, so Off. Smith put his cuffs on me and then Cpl. Austin was taking his off and I stated, "Coward, your mama raise a fag" as I turned, Cpl Austin punch me in the face with a closed fist, knocking out 3 of my teeth and thats when my step daughter ran over and said "What do y'all think y'all doing" and I tried to keep from

> swallowing my teeth so I spit it out and blood got on Off. Smith and Cpl. Austin claim it got on him. Off. Smith grab the cuffs by the chain in the middle and lead me to the van. I am not disputing that I spitted, but it wasn't intentional. I only spitted to keep from choking on my tooth after I was punched in the face while still handcuffed behind my back. Then taking to the emergency room were [sic] I still had 2 top teeth just hanging from my gums, had to be snatched out by the doctor. It was unjust to be hit while handcuffed and to lose my teeths [sic] by Cpl. Austin.

[1-1, pp. 3-5.] Plaintiff seeks to recover One Hundred Fifty Thousand Dollars ($150,000.00) in damages from the Defendants.

On August 5, 2005, the undersigned filed an order directing the Plaintiff to answer Special Interrogatories. [4-1.] The questions were designed to determine if any factual connection existed between the manner of Plaintiff's arrest and his ultimate conviction. On August 12, 2005, the Plaintiff filed his responses. [5-1.] He acknowledged that he was indicted and entered guilty pleas to charges of assaulting a police officer while resisting arrest and threatening a public official. [5-1, p. 1, Questions #3 and #9.] The Plaintiff indicated that he had informed his attorney about his injuries (Question #6) and, in his own words, he described his attorney's action in response (Question #7): "I informed my attorney but she never prepared a defense concerning the alleged assault on the officer nor resisting arrest charges; I am enclosing a letter filed with the Clerk of Court dated filed 10-19-04. (See Attached Document.) I also informed the Governor of South Carolina about the brutality." [5-1, p. 2.] The letter was attached and filed in this Court. It complains about lack of communication with his defense attorney, mentions his loss of three teeth and his perception that he had been victimized. The letter does not, however, suggest that his public defender failed to

3

develop or investigate his theory of the case – i.e., that he was attacked without provocation by the arresting officers. [5-2.]

### *PRO SE* COMPLAINT

Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5 (1980); *Estelle v. Gamble*, 429 U.S.97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F. 2d 1147 (4th Cir. 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes v. Rowe*, *supra*. Even under this less stringent standard, however, the *pro se* Complaint is still subject to summary dismissal. Liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### § 1983 ACTION IS PREMATURE

Plaintiff seeks to recover damages for injuries he sustained in the course of his arrest. He argues that he was not resisting arrest but instead defending himself against an unprovoked attack. An adjudication of Plaintiff's claims would essentially require this Court to re-examine his conviction. The necessary legal predicate for any award of damages would be a finding that his self-defense claim was true. For that reason, the Plaintiff cannot bring this action under 42 U.S.C. §1983 until his conviction

has first been vacated or expunged by other means.  The United States Supreme Court, in *Heck v. Humphrey*, 512 U.S. 477 (1994), explained the rule that claims of the type here presented must await the vacation or expungement of the underlying conviction:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. at 486-487 (footnotes omitted).

Any constitutional infirmity infecting Plaintiff' conviction may yet be discovered by the state courts of South Carolina.  The Plaintiff has not sought relief by way of direct appeal.  He may still file an application for Post Conviction Relief (PCR) under S.C. Code Annotated § 17-27-10 through § 17-27-160.  In response to Special Interrogatories, Plaintiff candidly admits he has not done so.  If his PCR application is unsuccessful in the Court of Common Pleas, he may seek review by the South Carolina Supreme Court through a Petition for Writ of Certiorari.  *See* § 17-27-100, South Carolina Code of Laws; and *Knight v. State*, 325 S.E.2d 535 (1985).  Clearly Plaintiff has yet to overturn his conviction.  Therefore, any cause of action under 42 U.S.C. § 1983 has yet to accrue.

Plaintiff also suggests that he was denied effective assistance of counsel because his trial attorney failed to present his claims of police brutality. Such a collateral attack upon a conviction certainly can be made in this Court through a petition for writ of *habeas corpus*, but only after exhaustion of all available state remedies. *See, e.g., Braden v. 30th Judicial Circuit* Court, 410 U.S. 484, 490-491 (1973); and *Moore v. De Young*, 515 F.2d 437, 442-443 (3rd Cir. 1975). Again, as Plaintiff admits himself, he has not even attempted a PCR application under South Carolina law.

A federal district court will not interfere in ongoing state court proceedings, absent extraordinary circumstances. *See, e.g., Younger v. Harris*, 401 U.S. 37, 44 (1971). In *Cinema Blue of Charlotte, Inc. v. Gilchrist*, 887 F.2d 49, 50-53 (4th Cir. 1989), the United States Court of Appeals for the Fourth Circuit ruled that federal district courts should abstain from constitutional challenges to state judicial proceedings, no matter how meritorious, if the federal claims have been or could be presented in an ongoing state judicial proceeding. At the present time Plaintiff has no claim against the Defendants under 42 U.S.C. §1983.

Under 28 U.S.C. § 1915, an indigent litigant may commence an action in federal court without paying the administrative costs of proceeding with the action. However, to protect against possible abuses of this privilege, the statute directs that a district court "shall dismiss" a case upon a finding that the action "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). Even applying liberal construction to Plaintiff's Complaint, it is clear that he has failed to state a claim upon which this Court could grant relief at this time.

## **CONCLUSION**

The Defendants should not be required to answer this Complaint. It is therefore recommended that the within Complaint be dismissed without prejudice and without issuance or service of process. Plaintiff's attention is directed to the Notice on the following page.

          Respectfully Submitted,

          s/Bruce H. Hendricks
          United States Magistrate Judge

September 6, 2005
Greenville, South Carolina

**Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"
& The Serious Consequences of a Failure to Do So**

The petitioner is hereby notified that any objections to the attached Report and Recommendation must be filed within **ten (10) days** of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See Mathews v. Weber*, 423 U.S. 261, 270-271 (1976).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** *See Keeler v. Pea*, 782 F. Supp. 42, 43-44 (D.S.C. 1992). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See United States v. Schronce*, 727 F.2d 91, 94 & n. 4 (4th Cir.); and *Wright v. Collins*, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. *Howard v. Secretary of HHS*, 932 F.2d 505, 508-509 (6th Cir. 1991). *See also Praylow v. Martin*, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court). In *Howard*, *supra*, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord Lockert v. Faulkner*, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and *Goney v. Clark*, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").

**This notice apprises the petitioner of the consequences of a failure to file specific, written objections.** *See Wright v. Collins*, supra; and *Small v. Secretary of HHS*, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk
United States District Court
Post Office Box 10768
Greenville, South Carolina 29603**
